

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| STATE of MISSOURI, ex rel.<br>JEREMIAH W. (JAY) NIXON,<br>Attorney General,<br><br>Plaintiff,<br><br>vs.<br><br>SOUTHERN UNION COMPANY,<br>A Delaware Corporation,<br><br>and<br><br>CMS ENERGY CORPORATION,<br>A Michigan Corporation,<br><br>Defendants. | Case No: 03-4112-CV-C-NKL<br><br>Division: |

## CONSENT FINAL JUDGMENT AND ORDER FOR PERMANENT INJUNCTION AND OTHER RELIEF

Plaintiff, the Attorney General of the State of Missouri ("Plaintiff"), has filed his Petition for Permanent Injunction and Other Relief pursuant to and alleging violations of the Clayton Act §7, as amended, 15 U.S.C. §18, and the Missouri Antitrust Law, Mo. Rev. Stat. § 416.011 *et seq.*

Plaintiff and Defendants Southern Union Company ("SU") and CMS Energy Corporation ("CMS") have agreed to the entry of this Consent Final Judgment and Order for Permanent Injunction and Other Relief ("Judgment") by this Court to resolve all matters of dispute between them in this action.

**NOW, THEREFORE,** Plaintiff and Defendants having requested the Court to enter this Judgment,

1

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** as follows:

## FINDINGS

1. This Court has jurisdiction over the subject matter of this case and over the parties consenting hereto. This Court has jurisdiction over each of the parties and this action pursuant to 28 U.S.C. §§1331 and 1337(a) and Clayton Act §§ 15 and 16, as amended, 15 U.S.C. §§ 25 and 26. This Court has jurisdiction over pendant state claims pursuant to 28 U.S.C. § 1367(a).

2. Venue is proper in this Court as to all parties under Section 12 of the Clayton Act, 15 U.S.C. § 22 and under 28 U.S.C. § 1391(b).

3. This Court has personal jurisdiction over Defendants.

4. Defendants have acknowledged service and waived any claim of insufficiency of process or service of process.

5. The Complaint asserts a claim upon which relief may be granted against Defendants under Clayton Act §7, as amended, 15 U.S.C. §18, and under the Missouri Antitrust Law, Mo. Rev. Stat. § 416.011, *et seq*.

6. Defendants, by signature of their counsel hereto, have agreed to entry of this Consent Judgment and Order for Permanent Injunction and Other Relief ("Judgment") by this Court to resolve all matters of dispute between them and Plaintiff. Defendants' authorization of their counsel to sign this consent order on their behalf is for settlement purposes only and does not constitute an admission by Defendants that the law has been violated as alleged in the Complaint filed herein, or that the facts as alleged in such Complaint, other than the jurisdictional facts, are true. Defendants have waived any right to appeal, petition for certiorari, or move to reargue or rehear this Judgment.

7. Entry of this Judgment is in the public interest.

## INJUNCTIVE RELIEF

### I.

### DEFINITIONS

1. "Acquisition" means the proposed acquisition of Panhandle Eastern Pipeline Company, Inc. from CMS by SU as described in the Amended and Restated Stock Purchase Agreement, dated May 12, 2003.

2. "Acquisition Date" means the date on which the Acquisition is consummated.

3. "AIG" means American International Group, Inc. (a corporation organized, existing and doing business under and by virtue of the laws of the State of Delaware, with its office and principal place of business located at 70 Pine Street, New York, New York 10270); its joint ventures, subsidiaries, divisions, equity funds, groups and affiliates controlled by American International Group, Inc. (including, but not limited to, AIG Global Investment Corp., AIG Highstar Capital GP, L.P., AIG Highstar Capital L.P., AIG Highstar II Funding Corp., and Southern Star Central Corp.).

4. "Commission" means the Federal Trade Commission.

5. "Central Pipeline" means the Central Pipeline acquired by AIG Highstar Capital, L.P. and Southern Star Central Corp., from The Williams Companies, that transports natural gas from producing locations in Kansas, Oklahoma, Texas, Wyoming and Colorado to consuming areas in portions of the states of Missouri and Kansas.

6. "CMS" means CMS Energy Corporation, its officers, directors, employees, agents and representatives, successors, and assigns; its joint ventures, subsidiaries, divisions, groups and

3

affiliates controlled by CMS Energy Corporation (including, but not limited to, CMS Enterprises Company, CMS Gas Transmission Company and Panhandle); and the respective officers, directors, employees, agents, representatives, successors, and assigns of each.

7. "Defendants" means SU and CMS individually and collectively, and the Person resulting from the Acquisition.

8. "Management Services Agreement" means the agreement made and entered into as of November 20, 2002, by and between Southern Star Central Corp. and Energy Worx, Inc., a wholly-owned subsidiary of Southern Union Company, for the operation and management of the Central Pipeline by Energy Worx, Inc., and any amendments thereto.

9. "Missouri Gas Energy" means the Missouri Gas Energy Division of Southern Union Company, its employees, agents and representatives, predecessors, and assigns; its joint ventures, subsidiaries, divisions, groups, successors and affiliates controlled by Southern Union Company or by Missouri Gas Energy, and the respective directors, officers, employees, agents, representatives and assigns of each.

10. "Non-Public Ownership Interest" means an Ownership Interest that is not registered for sale pursuant to the Securities Act of 1933.

11. "Ownership Interest" means any stock, share capital, equity, or other interest, or any present or contingent right to such stock, share capital, equity or other interest.

12. "Panhandle" means Panhandle Eastern Pipeline Company, a corporation organized, existing and doing business under the laws of the State of Delaware, with its office and principal place of business located at 5444 Westheimer Road, Houston, Texas 77056.

13. "Panhandle Pipeline" means the natural gas pipeline owned by Panhandle that transports natural gas from producing locations in Texas, Oklahoma, and Kansas to consuming areas in the Midwest, including, but not limited to, the State of Missouri.

14. "Person" means any individual, partnership, firm, trust, association, corporation, joint venture, unincorporated organization, equity fund, or other business or governmental entity.

15. "Related Proceeding" means the substantially similar proceeding before the Federal Trade Commission involving Southern Union Company and CMS Energy Corporation, and the Acquisition.

16. "Southern Star Central Corporation" means Southern Star Central Corporation, its officers, partners, employees, agents and representatives, predecessors, successors, and assigns; its joint ventures, subsidiaries, divisions, groups and affiliates controlled by Southern Star Central Corporation, and the respective directors, officers, employees, agents, representatives, successors, and assigns of each.

17. "State" or "Plaintiff" means the State of Missouri represented by its Attorney General.

18. "Stock Purchase Agreement" means the Amended and Restated Stock Purchase Agreement by and among CMS Gas Transmission Company, Southern Union Company and Southern Union Panhandle Corp. dated May 12, 2003, and any amendments thereto.

19. "SU" means Southern Union Company, its officers, directors, employees, agents and representatives, successors, and assigns; its joint ventures, subsidiaries, divisions, groups and affiliates controlled by Southern Union Company (including, but not limited to, Missouri Gas Energy, Energy Worx, Inc. and SUPC); and the respective officers, directors, employees, agents, representatives, successors, and assigns of each.

5

20. "SUPC" means Southern Union Panhandle Corporation, its officers, directors, employees, agents and representatives, successors, and assigns; its parents, joint ventures, subsidiaries, divisions, groups and affiliates controlled by Southern Union Panhandle Corporation; and the respective officers, directors, employees, agents, representatives, successors, and assigns of each.

## II.

## Separation From and Termination of Management Services Agreement

**IT IS ORDERED THAT:**

1. Prior to the Acquisition Date, Defendant SU shall:

    A. absolutely terminate the Management Services Agreement and

    B. secure the consent or waiver of AIG for the termination of the Management Services Agreement.

2. Defendants SU and CMS shall not consummate the Acquisition until the Management Services Agreement has been terminated.

3. Following the Acquisition Date, Defendant SU shall not, directly or indirectly, operate or manage the Central Pipeline.

4. Defendant SU shall not, directly or indirectly, through subsidiaries or partnerships, or otherwise, acquire any Ownership Interest in AIG, including but not limited to, the Central Pipeline or Southern Star Central Corp. For purposes of this paragraph, "Defendant SU" shall not refer to any officer, director, employee, agent or representative of SU, who acting in his or her individual capacity and not in concert, owns or acquires publicly-traded AIG common stock with an aggregate market value of less than $500,000.00.

5.  The purpose of this term is to ensure that Defendant SU has no Ownership Interest in AIG or the Central Pipeline, or any role in managing or operating the Central Pipeline, to remedy the lessening of competition from the proposed Acquisition as alleged in the Complaint.

## III.

## Separation of Ownership of Central and Panhandle Pipelines

1.  Defendant SU shall not sell, give, transfer, or otherwise provide, directly or indirectly, through subsidiaries, partnerships, or otherwise, any Ownership Interest in SU, SUPC, Panhandle, or the Panhandle Pipeline, to AIG. This paragraph excludes individual sales on the public market, executed through brokers, of shares of SU common stock held by an officer, director, employee, agent or representative of SU in his or her personal capacity and valued in aggregate at less than $500,000.00 in any one calendar year.

2.  If Defendant SU sells, gives, transfers, or otherwise provides any Non-Public Ownership Interest in SU, SUPC, Panhandle, or the Panhandle Pipeline to any person other than AIG, such Defendant shall transfer such Non-Public Ownership Interest subject to a restriction that prohibits the sale of such Non-Public Ownership Interest to AIG.

3.  The purpose of this Paragraph is to prevent AIG from obtaining an interest in SU, SUPC, Panhandle, or the Panhandle Pipeline, from Defendant SU, to remedy the lessening of competition from the proposed Acquisition as alleged in the Complaint.

## IV.

7

## Affiliate Transactions

**IT IF FURTHER ORDERED THAT:**

From and after the date of this Judgment, Defendant SU and any and all of its affiliates, successors, or assigns, shall not participate in the management or operation of, or acquire any ownership interest in, any interstate or intrastate natural gas pipeline which sells the transportation of natural gas, directly or indirectly, to any affiliate operating, managing, or having an Ownership Interest in a local natural gas distribution network within the State of Missouri (e.g., SU's Missouri Gas Energy division) unless they comply with each of the following terms and conditions:

1. Defendant SU, and any affiliates thereof, in connection with their participating in the management, operation or ownership of a local natural gas distribution network within the State of Missouri, do not provide any financial advantage (as defined in paragraph 3 below) to an affiliated entity participating in the operation, management, or ownership of an interstate or intrastate natural gas pipeline involved in the sale of transportation or storage of natural gas to the local natural gas distribution network in Missouri.

2. Defendant SU and any affiliates thereof, in connection with their participation in the sale of transportation, storage, or other services relating to the transmission or storage of natural gas through an interstate or intrastate natural gas pipeline, do not provide any financial advantage (as defined in paragraph 3 below) to any affiliated entity participating in the operation, management, or ownership of a natural gas distribution system in the State of Missouri (hereinafter "Missouri LDC affiliate").

3. For purposes of paragraphs 1 and 2 above, a "financial advantage" shall be deemed to have been conferred if:

    A. The Missouri LDC affiliate compensates SU or its affiliate for goods or services above the lesser of:

        1. The fair market price;

        2. The established regulated rate for such good or service; or,

        3. For any good or service not subject to federal or state rate regulation, the fully distributed cost to the Missouri LDC affiliate to provide the goods or services for itself; or if

    B. The Missouri LDC affiliate transfers any information, assets, goods or services to SU or its affiliate for below the greater of

        1. The fair market price;

        2. The established regulated rate for such good or service; or

        3. For any good or service not subject to state or local rate regulation, the fully distributed cost to the Missouri LDC affiliate.

    C. For purposes of this paragraph 3, the "fair market price" shall include consideration of discounts from regulated rates.

    D. For purposes of this paragraph 3, the term "fully distributed cost" means a methodology that examines all costs of an enterprise in relation to all the goods and services that are produced. "Fully distributed cost" requires recognition of all costs incurred, directly or indirectly, used to produce a good or service. Costs are assigned either through a direct or allocated approach. Costs that cannot be

directly assigned or indirectly allocated (e.g. general and administrative) must also be included in the "fully distributed cost" calculation through a general allocation.

4. Except as necessary to provide corporate support functions, i.e., joint corporate oversight, governance, support systems and personnel involving payroll, shareholder services, financial reporting, human resources, employee records, pension management, legal services, and research and development activities, Defendant SU and any of its affiliates shall conduct business in such a way as not to provide any preferential service, information or treatment to a Missouri LDC affiliate over another party at any time.

5. Effective July 1, 2003, for so long as Missouri Gas Energy is an affiliate of SU and owns, operates or manages local gas distribution networks in Missouri, every employee of SU and its affiliates, including SUPC, with direct or indirect decision-making authority over SUPC and its successor entities participating in the ownership, operation or management of a natural gas pipeline transporting gas to MGE and who receives earnings-based incentive compensation shall have such compensation calculated excluding revenues derived from the sale of natural gas transportation, storage or other services from SUPC to SU's Missouri Gas Energy Division.

6. Upon receiving a written request from the Plaintiff to explain a transaction involving an affiliate, Defendant SU and its involved affiliates shall provide complete documentation describing the transaction, and all justification for the terms of any agreement or for any action taken regarding an affiliated entity, including, but not limited to, documentation of the fair market value of the transaction (e.g., the cost of the goods and services contemplated by the transaction), other similar or relevant transactions of the affiliate, and all evidence of any consideration of alternatives to the decisions actually made.

7. For so long as SU owns, operates or manages, through its Missouri Gas Energy Division or otherwise, both a natural gas pipeline and a local gas distribution company in Missouri served by that natural gas pipeline, SU will provide to Plaintiff the following information related to any contacts or inquiries that it receives regarding any possible by-pass of Missouri Gas Energy's distribution system through a direct connection to an interstate or intrastate pipeline system: the name of the person or entity making the contact or inquiry, the date of the contact or inquiry, and the location related to the contact or inquiry and the identity of the pipeline.

## V.

### Compliance Reporting

**IT IS FURTHER ORDERED** that:

1. Within thirty (30) days after the date this Judgment becomes final, and then annually for ten (10) years on the anniversary of the date this Judgment becomes final, Defendant SU shall submit to the Plaintiff a verified written report setting forth in detail the manner and form in which it has complied and is complying with Sections II, III and IV of this Judgment. Defendant SU shall include in its compliance report, among other things that are required from time to time, a full description of the efforts being made to comply with the Judgment and copies of all non-privileged written communications to and from all persons relating to this Judgment.

## VI.

### Notification of Corporate Changes

**IT IS FURTHER ORDERED** that Defendant SU shall notify the Plaintiff at least thirty (30) days prior to consummation of any proposed change in the corporate Defendant SU such as dissolution, assignment, sale resulting in the emergence of a successor corporation, or the

creation or dissolution of subsidiaries or any other change in the corporation that may affect compliance obligations arising out of the Judgment.

## VII.

### Right of Access

**IT IS FURTHER ORDERED** that, for the purpose of determining or securing compliance with this Judgment, and subject to any legally recognized privilege, and upon written request with reasonable notice to Defendant SU made to its principal offices, Defendant SU shall permit any duly authorized representative of the Plaintiff:

1. Access, during office hours of the Defendant SU and in the presence of its counsel, to all facilities, and access to inspect and copy all books, ledgers, accounts, correspondence, memoranda and all other records and documents in the possession or under the control of Defendant SU relating to any matters contained in this Judgment; and

2. Upon five (5) business days' notice to Defendant SU from the date upon which the request is made and without restraint or interference from Defendant SU, to interview officers, directors, or employees of Defendant SU, who may have counsel present, regarding any such matters.

## VIII.

### ATTORNEYS' FEES AND INVESTIGATIVE COSTS

1. Within ten (10) business days of the entry of this Judgment, Defendants shall pay the sum of $90,000.00 to the Office of the Missouri Attorney General for reimbursement of investigative costs and attorneys' fees incurred by the Missouri Attorney General's Office in connection with the investigation leading up to the entry of this Judgment.

12

2. In the event any action is taken by the Missouri Attorney General's Office for the purpose of enforcing compliance with any of the terms of this Judgment, and the Attorney General prevails on any allegation of a violation, the Defendant against whom the Attorney General prevails shall be liable for reimbursement of reasonable investigative and litigation costs, including attorneys fees, in connection with that action as approved by the court.

## IX.

## STATE-FEDERAL CONSULTATION

Plaintiff shall consult with the Federal Trade Commission on all decisions relating to the enforcement of Sections II and III of this Judgment and will exercise its best efforts to resolve any inconsistent enforcement positions between the agencies relating to those Sections.

## X.

## MISCELLANEOUS

1. When final, this Judgment shall have the same force and effect and may be altered, modified or set aside in the same manner and within the same time provided by applicable rules for other judgments.

2. By signing this Judgment, Defendants represent and warrant that they can accomplish the full relief contemplated by the Judgment, including effectuating all required divestitures, assignments, and transfers and obtaining all necessary third-party approvals to effectuate the divestitures, assignments, transfers and agreements, and that all parents, subsidiaries, affiliates controlled by Defendants, and successors necessary to effectuate the full relief contemplated by this Judgment and are bound thereby as if they had signed this Judgment and were made parties to this proceeding.

13

3. The provisions of this Judgment shall apply to Defendants, and their successors and assigns, subsidiaries, affiliates controlled by Defendants, directors, officers, managers, agents, representatives, employees and all other persons in active concert or participation with any of them who receive actual notice of this Judgment by personal service or otherwise.

4. The Court shall retain jurisdiction over the parties for the purpose of enabling any of the parties to this Judgment to apply to this Court at any time for such further orders and directions as may be necessary or appropriate for the construction, implementation, enforcement, or modification of any of the provisions in this Judgment, and for the punishment of any violations of this Judgment.

5. The Defendants shall have the right to designate all or part of any reports, documents, transcripts of interviews or other information provided the Plaintiff pursuant to provisions of this Judgment as "Highly Confidential." Such Highly Confidential information, which includes but is not limited to trade secrets and other non-public business information, shall not be subject to public disclosure by the Plaintiff or by any other person, except by consent of the Defendant which submitted the Highly Confidential materials or by order of the Court granted in accordance with the following provisions:

    A. The Plaintiff may apply for relief from such confidential designations by filing an appropriate motion with this Court and serving a copy thereof by overnight delivery on counsel for the parties. Such motion may argue that the information sought to be disclosed is improperly classified as "Highly Confidential."

    B. The party responsible for the designation shall have not less than ten (10) business days to file and serve an opposition to the Plaintiff's motion with the Court,

14

should they choose to oppose the motion for disclosure. Thereafter, the matter shall be deemed to have been submitted to the Court for decision, subject to any further procedural orders the Court, in its discretion, may choose to make.

## XI.

## NOTICES

Any notices required by the Judgment shall be delivered to the parties at the following addresses:

    A.    For SU:

        Dennis Morgan, Esq.
        Executive Vice President Administration and General Counsel
        Southern Union Company
        One PEI Center
        Wilkes-Barre, PA 18711

    B.    For CMS:

        C. Benjamin Crisman, Jr.
        Skadden, Arps, Slate, Meagher & Flom, L.L.P.
        1440 New York Avenue, N.W.
        Washington, DC 20005

    C.    For the State of Missouri:

        Anne E. Schneider
        Antitrust Counsel
        P. O. Box 899
        Jefferson City, MO 65102
        (573) 751-3321
        (573) 751-7948 (facsimile)

## XII.

## EFFECTIVE DATE

This Judgment shall become effective upon the later of when the merger of the parties is consummated or signed by the Court. It shall become final in accordance with the applicable rules.

## XIII.

## COMPLIANCE WITH LAW

This Judgment shall not exempt Defendants from complying with all federal, state, or local laws, regulations, ordinances, or codes.

## XIV.

**IT IS FURTHER ORDERED** that this Judgment shall terminate ten (10) years from the date the Judgment becomes final.

STIPULATED AND AGREED TO BY:

16

| FOR THE PLAINTIFF State of Missouri: | FOR THE DEFENDANT Southern Union Company: |
|---|---|
| JEREMIAH W. (JAY) NIXON<br>Attorney General | |
| by_____/s/_____<br>Anne E. Schneider, Bar#35479<br>Antitrust Counsel<br>P. O. Box 899<br>Jefferson City, MO 65102<br>(573) 751-3321<br>(573) 751-7948 (facsimile) | by_____/s/_____<br>Dean L. Cooper, Bar #35692<br>James Swearengen, Bar #21510<br>Brydon, Swearengen & England<br>312 East Capitol Ave.<br>P.O. Box 456<br>Jefferson City, Missouri 65102-0456<br>(573) 635-7166 |
| | and |
| by_____/s/_____<br>Ronald Molteni, Bar #40946<br>Assistant Attorney General<br>P. O. Box 899<br>Jefferson City, MO 65102<br>(573) 751-3321<br>(573) 751-0774 (facsimile) | R. Bruce Beckner<br>Fleischman and Walsh, L.L.P<br>1400 Sixteenth Street, N.W.<br>Sixth Floor<br>Washington, D.C. 20036<br>(202) 939-7900<br>(202) 745-0916 (facsimile) |
| | **FOR THE DEFENDANT CMS Energy Corporation:** |
| | by_____/s/_____<br>Karl Zobrist, Bar # 28325<br>Blackwell, Sanders, Pepper, Martin, LLP<br>Suite 1000<br>2300 Main Street<br>Kansas City, MO 64141-6777<br>(816) 983-8000<br>(816) 983-8080 (facsimile) |
| | and |

17

C. Benjamin Crisman, Jr.
Skadden, Arps, Slate Meagher & Flom
1440 New York Avenue, N.W.
Washington, D.C. 20005
(202) 371-7330

SO ORDERED.

_____
United States District Judge

Dated: ~~May~~ June 3, 2003

/156363

18